United States Court of Appeals,

Fifth Circuit.

No. 92-9592.

Clarence BARROW, Plaintiff-Appellant,

v.

NEW ORLEANS STEAMSHIP ASSOCIATION, et al., Defendants-Appellees.

Jan. 3, 1994.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before WISDOM, HIGGINBOTHAM, and SMITH, Circuit Judges.

WISDOM, Circuit Judge.

Clarence Barrow appeals from the entry of summary judgment against him on all his claims against General Longshore Workers Local Union No. 3000 ("the Union"), the New Orleans Steamship Association ("NOSSA"), and Cooper/T. Smith Stevedoring Co., Inc. ("Cooper"). We AFFIRM.

I.

Clarence Barrow has been a New Orleans longshoreman and a member of the defendant Union (or its predecessor) since 1957. He has some thirty years' experience and an exemplary safety record as a winch operator.

In 1988, NOSSA and the Union entered into a collective bargaining agreement ("the CBA") which included a new seniority system. Barrow filed an EEOC complaint challenging the CBA seniority system as discriminatory under the Age Discrimination in Employment Act (ADEA).[1] After obtaining a right-to-sue letter from the EEOC, Barrow sued NOSSA and the Union. In *Barrow v.*

---

[1] 29 U.S.C. §§ 621-634. The substance of Barrow's complaint was that the CBA diluted his seniority by increasing the number of longshoremen classified as "A-1", the most senior category. Before the 1988 agreement, the "A-1" category included only longshoremen with more than twenty years' experience. After the agreement, however, the "A-1" category included all longshoremen with more than *fifteen* years' experience. That change increased the number of "A-1" longshoremen with whom Barrow had to compete for jobs.

*New Orleans Steamship Ass'n*[2] ("*Barrow I* "), this Court held that Barrow's disparate treatment challenge to the seniority system on its face was time-barred. We dismissed also the claim that the system was discriminatory as applied. We dismissed that claim without prejudice because the EEOC had not considered that contention.[3] We ordered dismissed without prejudice Barrow's claim that NOSSA and the Union had retaliated against him.[4] We upheld the district court's dismissal with prejudice as time-barred Barrow's claim that the new seniority system violated the CBA, but remanded the case to the district court for consideration of possible CBA breaches not attributable to the seniority system.[5] Finally, we held that Barrow's pendent state claim for emotional distress was not time-barred.[6] We remanded the case to the district court.

While his appeal in *Barrow I* was pending, Barrow filed EEOC complaints on the issues of retaliation and age discrimination. After the remand, he amended his complaint to reflect the new EEOC charges and to add Cooper, his employer, as a defendant. The defendants then moved for summary judgment. The district court granted the motion as to the Union but denied it as to NOSSA and Cooper.

Barrow's case was scheduled to be tried on June 15, 1992 before Judge Carr. Because Barrow failed to comply with Judge Carr's document stipulation order, however, Judge Carr continued the trial on that date.[7] Judge Carr took senior status on July 1 and reassigned Barrow's case to Judge Duplantier.[8] Judge Duplantier entertained another motion for summary judgment from

---

[2]932 F.2d 473 (5th Cir.1991).

[3]*Id.* at 479.

[4]*Id.*

[5]*Id.* at 480.

[6]*Id.*

[7]6 Rec. 1478-80.

[8]*Id.* at 1476-77.

NOSSA and Cooper,[9] and on December 1, 1992, he ruled in favor of both remaining defendants. Barrow appealed to this Court.

Four of Barrow's claims against the defendants survived after the prior panel's remand: (1) a disparate-impact claim that the new seniority system, though facially neutral, was discriminatorily applied; (2) the retaliation claim; (3) breach of contract claims unrelated to the seniority system imposed in the CBA; and (4) a pendent state claim for emotional distress. We review *de novo* the district court's orders granting summary judgment for the defendants on all four claims.

II.

*A. Barrow's Age Discrimination in Employment Act (ADEA) Claims*

1. Against NOSSA

The district court granted summary judgment for NOSSA on the basis that NOSSA was neither Barrow's employer nor an agent of his employer, and was therefore not covered by the ADEA. We agree with the district court's conclusion.

We recently discussed the meanings of the terms "employer" and "agent" in the ADEA context in *Deal v. State Farm County Mutual Insurance Co. of Texas.*[10] The plaintiff in *State Farm* was an employee of an independent insurance agency who sued her employer and State Farm, the company whose policies her agency sold. We affirmed the district court's holding that State Farm was not Deal's "employer" under the ADEA. We explained the test our Circuit applies:

> In determining whether an employment relationship exists within the meaning of Title VII and the ADEA, we apply a "hybrid economic realities/common law control test." ... The right to control an employee's conduct is the most important component of this test.... When examining the control component, we have focused on whether the alleged employer has the right to hire and fire the employee, the right to supervise the employee, and the right to set the employee's work schedule.... The economic realities component of our test has focused on whether the alleged employer paid the employee's salary, withheld taxes, provided benefits,

---

[9]Barrow questions the propriety of Judge Duplantier's decision to entertain another summary judgment motion by the same defendants whose motion Judge Carr had denied when no additional discovery had been performed since Judge Carr's ruling. Judge Duplantier's authority to reconsider such interlocutory rulings of his Court is well established. *See, e.g., McKethan v. Texas Farm Bureau,* 996 F.2d 734, 738 n. 6 (5th Cir.), *reh'g denied,* 3 F.3d 441 (5th Cir.1993), *petition for cert. filed,* 62 U.S.L.W. 3378 (U.S. Nov. 15, 1993).

[10]5 F.3d 117 (5th Cir.1993).

and set the terms and conditions of employment.[11]

Neither part of our test supports a conclusion that NOSSA was Barrow's employer.[12] First, NOSSA had no meaningful right to control Barrow's conduct. The stevedoring company foremen, not NOSSA, had the right to hire and fire Barrow, to supervise him, and to set his work schedule. Second, Barrow has produced no evidence that NOSSA paid his wages, withheld his taxes, provided benefits to him, or set the terms and conditions of his employment.

Barrow next contends that NOSSA was an "agent" of his employer under the ADEA. NOSSA was an agent of the stevedoring companies in one sense—it represented them in negotiations with the Union. But one can be another's agent for some purposes and not for others. The key question is whether NOSSA was the stevedoring companies' agent with respect to employment practices.[13] We agree with the Sixth Circuit's opinion in *York v. Tennessee Crushed Stone Ass'n*[14] that an agent of an employer under the ADEA is generally "a supervisory or managerial employee to whom employment decisions have been delegated by the employer".[15] Under that standard, NOSSA is not an agent of Barrow's employer.

2. Against the Union and Cooper/T. Smith

Although the Union was not Barrow's employer, it is covered by the ADEA as a labor organization.[16] Cooper was Barrow's employer within the meaning of the ADEA.

---

[11]*Id.* at 118-19 (citations omitted).

[12]Our decision is not in tension with *Williams v. New Orleans S.S. Ass'n,* 341 F.Supp. 613 (E.D.La.1972), in which a district court held that the companies comprising NOSSA were a single employer. In *Williams,* the district court held that the individual companies comprising NOSSA, not NOSSA itself, were an "employer". Furthermore, unlike the defendants in *Williams,* the defendants in this case vigorously refute Barrow's argument that NOSSA had employer-like control over him.

[13]*State Farm,* 5 F.3d at 119.

[14]684 F.2d 360 (6th Cir.1982).

[15]*Id.* at 362 (cited in *State Farm,* 5 F.3d at 119). "[W]hen *individual officers or other employees with responsibility for employment decisions* engage in discriminatory acts in behalf of their corporate employer, they, as well as the corporation, are liable ...". 3A Arthur Larson & Lex K. Larson, Employment Discrimination § 98.41(a)(4) (1993) (emphasis added).

[16]29 U.S.C. §§ 623(c), 630(d).

Barrow must show, as part of his prima facie case, that he was discharged.[17]  When an employee resigns, as Barrow did, he may satisfy the discharge requirement by proving *constructive discharge*.[18]  To show constructive discharge, an employee must offer evidence that the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign.[19]  Stated more simply, Barrow's resignation must have been reasonable under all the circumstances.  Whether a reasonable employee would feel compelled to resign depends on the facts of each case, but we consider the following factors relevant, singly or in combination:  (1) demotion;  (2) reduction in salary;  (3) reduction in job responsibilities;  (4) reassignment to menial or degrading work;  (5) reassignment to work under a younger supervisor;  (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation;  or (7) offers of early retirement on terms that would make the employee worse off whether the offer was accepted or not.[20]

Barrow has not shown the constructive discharge element of his prima facie case.  He has

---

[17]*Stephens v. C.I.T. Group/Equipment Financing, Inc.,* 955 F.2d 1023, 1027 (5th Cir.1992).

[18]*Id.*

[19]*McKethan,* 996 F.2d at 740-41.  This test is objective;  the question is not whether this employee felt compelled to resign, but whether a reasonable employee would have felt so compelled.  *Guthrie v. J.C. Penney Co., Inc.,* 803 F.2d 202, 207 (5th Cir.1986).

[20]*See McKethan,* 996 F.2d at 741 (listing some of the above factors);  *Stephens,* 955 F.2d at 1027 (employee was demoted, his salary was cut, and employer badgered him to resign);  *Christopher v. Mobil Oil Corp.,* 950 F.2d 1209, 1214-15 (5th Cir.) (employees offered choice between retirement or continued employment, both on unfavorable terms), *cert. denied,* --- U.S. ----, 113 S.Ct. 68, 121 L.Ed.2d 35 (1992);  *Guthrie v. Tifco Indus.,* 941 F.2d 374, 377 (5th Cir.1991) (employee was demoted, his salary was cut, and he was reassigned to work for a man seventeen years younger than himself who he had helped train), *cert. denied,* --- U.S. ----, 112 S.Ct. 1267, 117 L.Ed.2d 495 (1992);  *Wilson v. Monarch Paper Co.,* 939 F.2d 1138, 1145 (5th Cir.1991) (managerial employee, a college graduate, was reassigned to janitorial duties);  *Bodnar v. Synpol, Inc.,* 843 F.2d 190, 193 (5th Cir.) (employee was offered choice between early retirement and continued employment, both on terms less favorable than the status quo), *cert. denied,* 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988);  *Guthrie v. J.C. Penney Co., Inc.,* 803 F.2d at 205-06 (employee was badgered by employer to resign and was reprimanded in the presence of his subordinates).  *But see McCann v. Litton Sys., Inc.,* 986 F.2d 946, 952 (5th Cir.) ("slight decrease in pay coupled with a loss of some supervisory responsibilities" insufficient to constitute constructive discharge), *reh'g denied,* 992 F.2d 326 (5th Cir.1993).  *See generally* Alan G. Skutt, Annotation, *Circumstances Which Warrant Finding of Constructive Discharge in Cases Under Age Discrimination in Employment Act,* 93 A.L.R. Fed. 10 (1989).

introduced no evidence on any of the seven factors listed above. That list is not exclusive, but Barrow has introduced no evidence sufficient to raise a genuine dispute on any other basis for constructive discharge. Barrow asserts that a reasonable employee would feel compelled to resign after being unable to obtain regular work on a gang. We disagree. A longshoreman's inability to obtain a regular gang position is insufficient, without more, to constitute constructive discharge under the ADEA.

Indeed, the record reveals that the number of hours Barrow worked, as a percentage of all hours worked by all union longshoremen of Barrow's seniority, remained roughly constant or even increased slightly from 1984-85 to 1989-90.[21] These statistics also reveal that the total number of hours worked by longshoremen on the New Orleans waterfront dropped substantially in the late 1980s. The general economic downturn that struck the waterfront at that time constitutes a reasonable factor other than age which explains the decline in Barrow's hours.[22] For the same reason,

---

[21]The district court's opinion quoted from a report prepared by Dr. Jeanneret, defendants' expert witness, listing Barrow's hours as a percentage of the total, 7 Rec. 1809. *See Barrow v. General Longshore Workers Local Union No. 3000,* 1992 WL 370080, at *4 n. 2 (E.D.La.1992):

| Year | TotalA-1 Hours | Barrow'sHours | | 7 ofTotal |
|------|------|------|------|------|
| 1984-85 | 1,600,986 | 1,795 | | 0.0011 |
| 1985-86 | 1,176,928 | 774 | * | 0.0007 |
| 1986-87 | 646,257 | 1,213 | | 0.0019 |
| 1987-88 | 625,317 | 973 | | 0.0016 |
| 1988-89 | 745,140 | 1,150 | | 0.0015 |
| 1989-90 | 672,077 | 1,157 | | 0.0017 |

* Barrow worked primarily in grain, but during this period the shippers began using nonunion longshoremen.

[22]*See* 29 U.S.C. § 623(f)(1). At oral argument, Barrow's counsel called those statistics a "pretext" because the total hours figures include hours worked by non-winch runners. To show that the defendants' proffered reason was a pretext for discrimination, however, Barrow must offer evidence not only that the defendants' proffered reason was false, but also that age discrimination was the real reason for the defendants' action. *See St. Mary's Honor Center v. Hicks,* 509 U.S. ----, ----, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407, 422 (1993); *Bodenheimer v.*

Barrow's allegation that he was denied employment opportunities (specifically, a regular gang position) must fail. Barrow's employer and the Union have produced a reasonable factor other than age to explain Barrow's inability to get a regular gang position.[23]

*B. Barrow's Retaliation Claim*

We require a showing of three elements to make out a prima facie case of retaliation:[24] (1) the plaintiff engaged in activity protected by the ADEA or Title VII; (2) an adverse employment action occurred; and (3) there was a causal connection between the participation in the protected activity and the adverse employment action.[25]

1. Against NOSSA

Barrow has no retaliation claim against NOSSA for the reason stated above: NOSSA was neither his employer nor an agent of his employer, and therefore not required to conform to the ADEA in its dealings with him.

2. Against the Union

Barrow has produced insufficient evidence of adverse employment action and causation—the second and third elements of his prima facie case—to survive summary judgment for the Union. The record shows that, far from taking action against Barrow, the Union consistently tried to help him get work. The Union interceded on Barrow's behalf after a May 13, 1990 incident[26] in which Barrow

---

*PPG Indus., Inc.,* 5 F.3d 955, 957 (5th Cir.1993). Barrow has not produced sufficient evidence that the defendants' statistical methodology is a pretext for age discrimination.

[23]*See Smith v. Farah Mfg. Co., Inc.,* 650 F.2d 64, 66, 68-70 (5th Cir.1981), holding that termination of an employee during a general reduction in work force to meet economic conditions constitutes a reasonable factor other than age. We need not address the other explanation offered by the defendants, namely that Barrow voluntarily retired to receive a pension of some $18,000 a year.

[24]29 U.S.C. § 623(d).

[25]*Shirley v. Chrysler First, Inc.,* 970 F.2d 39, 42 (5th Cir.1992). Unlike some of our sister Circuits, we do not require the employee to show the employer's *knowledge* of the employee's protected conduct as an element of the employee's prima facie case. *Cf., e.g., Hollander v. American Cyanamid Co.,* 895 F.2d 80, 85 (2d Cir.1990). Questions about the extent of the employer's knowledge, however, are of course relevant to the element of causation.

[26]The incident occurred a year after Barrow filed his first EEOC complaint against the Union and about four months after Barrow filed this lawsuit against the Union. *See Barrow I,* 932 F.2d

allegedly threatened a Cooper foreman.[27] Cooper instituted a complete ban on hiring Barrow after the incident,[28] but reduced that penalty to a two-week suspension after the Union intervened.[29] The Union also wrote a letter to NOSSA demanding that NOSSA's members fill the winch runner vacancies on their gangs. This letter included a specific reference to Barrow as a qualified winch runner who was not part of a regular gang.[30] In the light of these events, we do not believe Barrow has raised any dispute of material fact concerning retaliatory adverse employment action taken against him by the Union.

3. Against Cooper

Barrow has produced insufficient evidence that his protected action—filing complaints with the EEOC and this lawsuit—*caused* Cooper to take adverse employment action against him. The district court held that "Barrow's own intemperate activity" had caused Cooper to discipline him. We agree. The incident of May 13, 1990 was immediately followed by Cooper imposing a hiring ban on Barrow, a ban that was lifted only after the Union interceded on Barrow's behalf. The record shows that Cooper took adverse employment action against Barrow because Barrow threatened one of Cooper's foremen, not because Barrow filed an EEOC charge against Cooper.

---

at 476. The timing is important, because the Union's action on Barrow's behalf after he filed his EEOC charge tends to disprove any notion that the Union retaliated against Barrow.

[27]The details of the incident are not in the record. Cooper says Barrow "directed abusive and threatening language" at Burnell Scott, one of Cooper's foremen. 5 Rec. 1392. Barrow denies losing his temper, but Scott nevertheless felt sufficiently threatened to summon the police to the scene. *Id.*

[28]5 Rec. 1392.

[29]The CBA provided a two-step grievance procedure for resolving disputes between Union members and the stevedoring companies. 5 Rec. 1404 (affidavit of Mark Ellis, financial secretary-treasurer of the Union). Ellis met with Barrow and discussed the May 13 incident. *Id.* at 1405. He then scheduled a "step one" meeting for May 17. Cooper failed to send a representative to that meeting, so another was scheduled for the following day. Cooper sent a representative to the May 18 meeting. At that meeting, Ellis demanded that Cooper rescind its hiring ban on Barrow. Cooper refused, and the Union invoked "step two" of the grievance procedure. The "step two" meeting was set for May 24. At that meeting, the Union again demanded that Cooper lift the penalty from a permanent suspension to a two-week suspension (of which Barrow had already completed ten days) and a six-month ban on work for Burnell Scott's gang.

[30]8 Rec. 2051-55.

*C. Barrow's Breach of Contract Claims*

Barrow's original complaint charged the Union and NOSSA with breaching the collective bargaining agreement.[31] On Barrow's prior appeal to this Court, we upheld the district judge's ruling that Barrow's breach of contract claim was barred by limitations.[32] We remanded on the question whether the defendants had also violated the CBA in failing to fill all gang vacancies. After our remand, the district court held that (1) those allegations were likewise barred by limitations, and (2) the breach of contract allegations in Barrow's amended complaint did not relate back under Fed.R.Civ.P. 15(c). We review the district court's first holding *de novo,*[33] and its second for abuse of discretion.[34]

Barrow maintains that NOSSA and Cooper breached the CBA and the Union breached its duty of fair representation by not timely filling all gang vacancies. Those claims are subject to the six-month statute of limitations found in § 10(b) of the National Labor Relations Act (NLRA).[35] The claims accrued, and the limitations clock began to run, when Barrow discovered or should have discovered that persistent gang vacancies existed.[36] Barrow undercuts his own position here by admitting that "vacancies at his position of winch runner existed for *months and years* in violation of the contract".[37] Barrow's allegations of persistent gang vacancies are based on the same facts as those underlying the allegations that we held time barred in *Barrow I.* We agree with the district court that Barrow had knowledge of CBA violations more than six months before he brought suit.

---

[31]1 Rec. 210.

[32]*Barrow I,* 932 F.2d at 480.

[33]*Trial v. Atchison, Topeka & Santa Fe Ry. Co.,* 896 F.2d 120, 122 (5th Cir.1990).

[34]*See Louisiana-Pacific Corp. v. ASARCO, Inc.,* 5 F.3d 431, 434 (9th Cir.1993); *Dandrea v. Malsbary Mfg. Co.,* 839 F.2d 163, 166 (3d Cir.1988).

[35]29 U.S.C. § 160(b); *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 170-72, 103 S.Ct. 2281, 2293-95, 76 L.Ed.2d 476 (1983); *Nelson v. Local 854 Dock Loaders & Unloaders of Freight Cars & Barges Union,* 993 F.2d 496, 498-99 (5th Cir.1993) (per curiam).

[36]*Barrow I,* 932 F.2d at 480; *Barrett v. Ebasco Constructors, Inc.,* 868 F.2d 170, 171 (5th Cir.1989).

[37]Brief of Appellant at 37 (emphasis added).

Accordingly, the district court correctly held that those allegations are time barred.

We need not address the question whether the district court abused its discretion in holding that the allegations of Barrow's amended complaint did not relate back as per Fed.R.Civ.P. 15(c). Even if those allegations did relate back to the date Barrow filed this suit, they would still be time barred, because they involve conduct of which Barrow had knowledge more than six months before this suit was filed. We find no error in the district judge's ruling that Barrow's breach of contract claims were not brought within the limitations period.

*D. Barrow's Pendent Emotional Distress Claim*

The district court held Barrow's state-law claim for intentional infliction of emotional distress was barred by limitations as to defendant Cooper, and preempted by the Labor-Management Relations Act (LMRA) as to the other defendants. We need not look beyond the preemption question to resolve the case.

The LMRA preempts state-law emotional distress claims if those claims are related to employment discrimination.[38] In this case, Barrow claims his emotional distress resulted from "trying to get work and not being able to get it".[39] Barrow's inability to get work, he alleges, derived from the age discrimination he says he suffered at the hands of the defendants. Accordingly, his claim relates to employment discrimination, and the district court correctly held it preempted by the LMRA.[40]

AFFIRMED.

---

[38]*See Farmer v. United Bhd. of Carpenters and Joiners of Am., Local 25,* 430 U.S. 290, 305, 97 S.Ct. 1056, 1066, 51 L.Ed.2d 338 (1977).

[39]Brief of Appellant at 13.

[40]*See Brown v. Southwestern Bell Tel. Co.,* 901 F.2d 1250, 1255-56 (5th Cir.1990).