**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

No. 00-30342

---

LYNN DAVID,

Plaintiff-Appellant,

versus

POINTE COUPEE PARISH SCHOOL BOARD;
FRANK AGUILLARD, JR; DAVID LEE, Dr;
RUSSELL POLAR; THOMAS NELSON; NELL
LACOUR; XYZ INSURANCE, XYZ INSURANCE
COMPANY,

Defendants-Appellees.

---

Appeal from the United States District Court
for the Middle District of Louisiana
98-CV-282-A

---

January 4, 2001

Before REYNALDO G. GARZA, STEWART, and DENNIS, Circuit Judges.

CARL E. STEWART, Circuit Judge:[*]

Plaintiff-Appellant Lynn David ("Mrs. David") appeals the district court's granting of

Defendants-Appellees' motion for summary judgment regarding her complaint alleging that the

Defendants-Appellees violated her First Amendment Right to Free Speech. Because we find that

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Mrs. David presented evidence establishing a genuine issue of material fact that she suffered an adverse employment action, we reverse and remand to the district court.

FACTUAL AND PROCEDURAL HISTORY

Defendant-Appellee Pointe Coupee Parish School Board ("the School Board") hired Mrs. David as a Business Manager on November 1, 1993. Mrs. David's professional responsibilities entailed managing the accounts and expenses of the School Board including the expenditures of the School Board Superintendent. Dr. David Lee ("Dr. Lee") became the Superintendent of Schools for Pointe Coupee Parish in January of 1995.

Within several months, Mrs. David noticed that Dr. Lee had made a number of unusual expenditures of public funds. Concerned that the expenditures may have been illegal, Mrs. David reported these spending irregularities to Defendants-Appellees School Board members Frank Aguillard, Jr. ("Aguillard"), Russell Polar, Thomas Nelson, and Nell Lacour. Although each School Board member individually assured Mrs. David that Dr. Lee's irregular spending practices would be stopped, the unlawful expenditures did not cease.

As a result, Mrs. David contacted the Louisiana Legislative Auditor's Office in September of 1997 and requested a review or audit of the School Board to determine whether any public funds had been misappropriated. The following month, Mrs. David disclosed to the School Board in executive session that she was concerned with Dr. Lee's suspicious spending practices in five different areas. Unaware of Mrs. David's previous letter to the Louisiana Auditor and the consequent pending investigation, Aguillard met with the school system's independent auditor the next day to draft a letter to the Louisiana Auditor requesting an investigation.[1]

---

[1] The record does not contain the results of the Auditor's investigation.

2

On January 14, 1998, Mrs. David resigned her position as Business Manager with the School Board. Alleging that the School Board, individual School Board members, and Dr. Lee unlawfully discharged her in violation of her First Amendment Right to Free Speech, Mrs. David sued the Defendants-Appellees under 42 U.S.C. § 1983. The district court granted summary judgment in favor of Defendants-Appellees, and Mrs. David now appeals.

DISCUSSION

I.    Standard of Review

We review de novo a district court's grant of summary judgment, applying the same legal standard as did the district court. Cowart v. Ingalls Shipbuilding, Inc., 213 F.3d 261, 263 (5th Cir. 2000). If "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," then summary judgment shall be rendered. FED. R. CIV. P. 56(c); e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The nonmovant's response must set forth particular facts indicating that there is a genuine issue for trial. Mississippi River Basin Alliance v. Westphal, 230 F.3d 170, 174 (5th Cir. 2000). A "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). This court will review all facts in the light most favorable to the nonmovant. Westphal, 230 F.3d at 174.

II.     Retaliation for Exercising First Amendment Right of Free Speech

    A.     Elements

To establish a claim for retaliation for exercising her right to free speech under the First Amendment, a public employee "must establish that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, (3) there was a causal connection between the two, and (4) the execution of a policy, custom, or practice . . . caused the adverse action." Sharp v. City of Houston, 164 F.3d 923, 932 (5th Cir. 1999). Finding that Mrs. David failed to demonstrate that she suffered an adverse employment action as a result of her complaints about Dr. Lee's alleged misappropriation of public funds, the district court granted summary judgment in favor of the Defendants-Appellees. Because the court's summary judgment ruling neither addressed nor relied on the remaining three elements required for a public employee to prove retaliation for exercising the First Amendment right to free speech, our review is limited to the discrete issue of whether the court erred in finding that Mrs. David failed to present evidence sufficient to establish a genuine issue of material fact regarding her allegation that she suffered an adverse employment action.

    B.     Adverse Employment Action: Constructive Discharge

An employee's constructive discharge from work is an adverse employment action that can result in employer liability. See Sharp, 164 F.3d at 933. An employee who resigns may demonstrate constructive discharge by two means. First, she can "offer evidence that the employer made [her] working conditions so intolerable that a reasonable employee would feel compelled to resign." Barrow v. New Orleans Steamship Assoc., 10 F.3d 292, 297 (5th Cir. 1994). Second, an employee can prove constructive discharge with evidence that she was given an ultimatum requiring her to

4

choose between resignation and termination.  Faruki v. Parsons S.I.P., Inc., 123 F.3d 315, 319 (5th Cir. 1997).[2]

Under the reasonable employee standard, the following factors are relevant, singularly or in combination:

(1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement on terms that would make the employee worse off whether the offer was accepted or not.

Barrow, 10 F.3d at 297.  We emphasize that an analysis using these factors should not be undertaken to determine whether the employee in-fact felt compelled to resign, "but whether a reasonable employee would have felt so compelled."  Id. at 297 n.19 (citing Guthrie v. J.C. Penney Co., Inc., 803 F.2d 202, 207 (5th Cir. 1986)).  However, this court requires more than trivial acts to support an allegation of constructive discharge.  See Sharp, 164 F.3d at 932.  Thus, "a constructive discharge claim requires a 'greater severity or pervasiveness of harassment than the minimum required to prove hostile work environment.'"  Benningfield v. City of Houston, 157 F.3d 369, 378 (5th Cir. 1998) (quoting Landgraf v. USI Film Prod., 968 F.2d 427, 429 (5th Cir. 1992)).

Defendants-Appellees note that under the reasonable employee standard of constructive discharge, Mrs. David only proffered evidence designed to support a finding under the sixth Barrow factor.  She alleged that Defendants-Appellees badgered, harassed, or humiliated her in a calculated

---

[2] The district court cited two Tenth Circuit cases in support of this legal proposition.  See Acrey v. Am. Sheep Indus. Ass'n, 981 F.2d 1569, 1573-74 (10th Cir. 1992) (Plaintiff was told to resign or she would be fired.); Spulak v. K Mart Corp., 894 F.2d 1150, 154 (10th Cir. 1990) ("Constructive discharge is supported by evidence that an employee has resigned, rather than waiting to be fired.).

effort to encourage her resignation. They contend, however, that Mrs. David's evidence was legally insufficient to sustain her constructive discharge claim.

We find the Defendants-Appellees' argument persuasive. Specifically, Mrs. David alleged that because of her "whistle blowing," Dr. Lee orally reprimanded her for allowing employees within her department to leave work early without his knowledge and that the Maintenance Supervisor was promoted to the position of Maintenance Director for the purpose of removing him from the umbrella of her direct supervision. Moreover, Mrs. David contends that she was prevented from attending a convention that she believed would have been professionally beneficial and that important information was withheld regarding monies from the state that she considered crucial to performing her job.

Record evidence supports the School Board's contention that Dr. Lee's oral reprimand was merely intended to inform Mrs. David that her unilateral decision to release employees from work without his prior approval or knowledge was imprudent. Regarding Mrs. David's second complaint, the record contains evidence that the Maintenance Supervisor, Donald Fuselier ("Fuselier"), was promoted to Maintenance Director in recognition of the many years of service that he had rendered to the school system and to reward him for the additional responsibilities that he undertook as a result of construction projects at two of the parish schools. Moreover, Mrs. David's supervision of Fuselier before this promotion was an anomaly under the school system's existing organizational chart because Maintenance Supervisor and Business Manager are lateral positions.

Mrs. David's allegation that she was denied the opportunity to attend a convention in retaliation for her "whistle blowing" is also unsupported. In her own deposition testimony, Mrs. David acknowledged that school policy required employees to submit a form requesting leave to attend a conference or convention. Mrs. David admitted not only that she was aware of the form but

6

also that she never submitted a copy of it to request an opportunity to attend the convention to which she was allegedly denied access.

Furthermore, the critical information, which Mrs. David contends was improperly kept from her making it impossible to perform her job duties, involved a letter from the Louisiana Department of Education. The letter indicated that the decreasing number of students eligible to be served by the school system was precipitating a commensurate reduction in the amount of available state funds. Within the fifteen days that the School Board was allowed to appeal this decision, Dr. Lee timely responded, and the school system lost none of its funding. But more importantly, Mrs. David failed to proffer any evidence of how exclusion from the aforementioned financial information made it impossible for her to perform her job.

We are unconvinced that the record supports Mrs. David's claim of constructive discharge under the reasonable employee standard. The evidence simply does not comport with a finding that the Defendants-Appellees engaged in conduct that created working conditions so intolerable that a reasonable employee would feel compelled to resign. Accordingly, we find no error regarding this portion of the district court's summary judgment ruling.

The record does, however, provide a basis for Mrs. David's alternative theory of constructive discharge. In her deposition testimony, Mrs. David made the following statement regarding the January 9, 1998, meeting between her and School Board member Elliot Bizette ("Bizette"):

> Mr. Bizette called and asked me if I would meet him somewhere that was not very obvious to other School Board members or to Dr. Lee. . . . So we had a meeting that afternoon at approximately 4:00, at which time Mr. Bizette met with me and my husband and he voiced his concerns about my future with the School Board. That [during] the December board meeting, I had been discussed extensively in executive session. That Dr. Lee had given the board an *ultimatum* as to whether I would stay

7

or he would go or that one of us had to go. And Elliot told me that *one of us was going to be fired* over it *and it was not going to be Dr. Lee*.

Plaintiff-Appellant's Deposition at 193-94, <u>Lynn David v. Pointe Coupee Parish Sch. Bd., et al</u>, (No. 98-282) (emphasis added). Mrs. David's pleadings included a Notice of Filing Evidence in Support of Memorandum in Opposition to Defendant's Motion for Summary Judgment that referenced the pages of her deposition containing the aforementioned testimony.

We hasten to point out that a more sagacious filing would have actually attached excerpted copies of the relevant testimony for the ready reference of the district judge rather than counsel's merely listing applicable portions of Mrs. David's entire deposition. However, upon de novo review of the summary judgment record in the light most favorable to the nonmovant, we find that Mrs. David proffered arguable evidence of an ultimatum that left her with the choice to either resign or be fired. We note that Mrs. David's deposition testimony is very similar to the quality of evidence found in <u>Faruki</u>.[3]

In stark contrast, Defendants-Appellees' Statement of Uncontested Facts averred that Dr. Lee "never recommended nor even suggested to the School Board that any disciplinary action be taken against Lynn David as a result of her bringing Dr. Lee's alleged spending irregularities to the School Board's attention" and that Dr. Lee "never gave any type of ultimatum to the School Board that either he or Lynn David must be terminated." Alternatively, Defendants-Apellees contend that Mrs. David's constructive discharge claim based on the alleged ultimatum is meritless because she had in fact decided to resign before Bizette purportedly issued the ultimatum during the January 9, 1998, meeting.

---

[3] The plaintiff proffered deposition testimony that he had been told he should find another job or else he would be placed on indefinite unpaid leave. <u>Faruki</u>, 123 F.3d at 319.

Regarding the aforementioned conflicting testimony, we must take Mrs. David's allegation as true and draw all inferences in her favor. See Faruki, 123 F.3d at 319. As to the Defendants-Apellees' latter contention, we are unpersuaded that the evidence demonstrates, as a matter of law, that Mrs. David decided to resign before the January 9, 1998, meeting with Bizette. The record is uncontested that during 1997, Mrs. David had been in contact with Sheriff Paul Raymond Smith ("the Sheriff") regarding employment opportunities, but it also clearly contains evidence that despite having applied for employment with the Sheriff, Mrs. David did not actually accept a position until after she was allegedly informed that she should resign or risk being fired. Thus, the timing of Mrs. David's resignation from the School Board does not establish that she had decided to resign before she ever received the alleged ultimatum. Accordingly, both of the Defendants-Appellees' arguments create issues of material fact regarding Mrs. David's constructive discharge claim that are inappropriate for determination on summary judgment. See id. at 320.

Because Mrs. David's deposition testimony was not clearly presented in opposition to the summary judgment motion, the district court did not, however, consider it. As such, the district court "failed to address [Mrs. David's] most compelling evidence of constructive discharge." Faruki, 123 F.3d at 319. Accordingly, it concluded that no genuine issue of material fact existed regarding whether Mrs. David suffered an adverse employment action as a result of complaining about Dr. Lee's alleged misappropriation of public funds. For the reasons previously stated, we cannot agree.

CONCLUSION

9

Therefore, we REVERSE the district court's grant of summary judgment and REMAND for proceedings consistent with this opinion.

REVERSED and REMANDED.