# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 14, 2009

Charles R. Fulbruge III
Clerk

No. 08-60985
Summary Calendar

RENA MCGARRY,

Plaintiff-Appellant

v.

UNIVERSITY OF MISSISSIPPI MEDICAL CENTER,

Defendant-Appellee.

Appeal from the United States District Court for the Southern District of
Mississippi, Jackson Division
USDC No. 3:05-CV-00792

Before JOLLY, WIENER, and ELROD, Circuit Judges.

PER CURIAM:[*]

This appeal arises from the district court's grant of summary judgment in favor of the appellee, University of Mississippi Medical Center, on all of the appellant, Rena McGarry's, claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, the Age Discrimination in Employment Act (ADEA) of 1967, 29 U.S.C. § 621, and state law. We have jurisdiction pursuant to 28 U.S.C. § 1291. For the following reasons, we affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In June of 2004, the appellant was working for the appellee as a staff nurse in the Neurosurgical Intensive Care Unit (NSICU) when one of her patients, Johnny Gilmore, allegedly threatened to kill her and accused her of physically assaulting and verbally abusing him. Gilmore claimed that the appellant had slapped him, cursed at him, broke his laptop computer, and rummaged through his personal items. Pursuant to hospital policy, the appellant was suspended without pay pending completion of an investigation. The internal investigation yielded insufficient evidence to substantiate Gilmore's allegations. As a result, the appellant was reinstated as a staff nurse with full back pay. The appellee decided to transfer the appellant from the NSICU, where Gilmore remained a patient, to the 4 South neurosurgical floor. The uncontradicted summary judgment evidence indicates that the appellant's new position had the same job title, benefits, and hours as her position with the NSICU. In addition, the appellant's salary would be no lower than what she had received in her former position.[1] The appellant never reported to work on 4 South; instead she tendered her resignation.

After obtaining a right to sue letter from the Equal Employment Opportunity Commission (EEOC), the appellant filed the instant suit charging the appellee with race discrimination, sex discrimination, retaliation, maintaining a hostile work environment and constructive discharge under Title VII; age discrimination and retaliation under ADEA; and state law claims of constructive and wrongful discharge. The appellant sought equitable and monetary relief, including back pay, actual and compensatory damages, attorney's fees, and reinstatement to her former position in the NSICU. After discovery was complete, the appellee filed a "Motion to Dismiss/Motion for

---

[1] The appellee claims that the appellant would have received a two-dollar hourly raise. The appellant contends that she was never informed of this raise.

Summary Judgment," which the district court treated as a motion for summary judgment. The district court ruled that the appellant's claims under ADEA and state law were barred by the Eleventh Amendment and that appellant had failed to produce any competent evidence to refute the appellee's claim that it was entitled to summary judgment on her Title VII claims.

## II. ANALYSIS

We review a grant of summary judgment de novo, applying the same standards as the district court. *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 190 (5th Cir. 2001). Under Federal Rule of Civil Procedure 56(c), a court may grant summary judgment where the evidence reveals no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has carried its summary judgment burden, the opposing party must set forth specific facts showing a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Allegations or affidavits setting forth merely conclusory facts and conclusions of law are insufficient. *Galindo v. Precision Amer. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985). We review a district court's evidentiary decisions under an abuse of discretion standard. *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 349 (5th Cir. 2001).

### A. ADEA and State Law Claims

It is well-established that the Eleventh Amendment bars "an individual from suing a state in federal court unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002) (citations omitted).

The Eleventh Amendment also bars state law claims in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120-21 (1984). The scope of this immunity "extends to any state agency or entity deemed an alter ego or arm of the state." *Perez*, 307 F.3d at 326 (internal quotation marks omitted). The appellee, as an arm of the University of Mississippi, is an agency of the state and entitled to Eleventh Amendment immunity absent waiver or abrogation. *See Sullivan v. Univ. of Miss. Med. Ctr.,* 617 F. Supp. 554, 557 (S.D. Miss. 1985); *see also Miss. Code Ann.* § 37-115-25; *Jagnandan v. Giles*, 538 F.2d 1166, 1174 (5th Cir. 1976).

As a preliminary matter, we observe that Congress did not abrogate the states' sovereign immunity with respect to the ADEA. *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 91 (2000). We also note that the state of Mississippi expressly preserved its sovereign immunity to suit in federal court when it enacted the Mississippi Tort Claims Act. Miss. Code. Ann. § 11-46-5(4) ("Nothing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts . . . .").

The appellant first claims that the district court erred when it held that Mississippi had not waived its sovereign immunity by accepting federal funding. Under 42 U.S.C. § 2000d-7(a)(1), a state does not enjoy sovereign immunity from suit in federal court for violations "of any . . . [f]ederal statute prohibiting discrimination by recipients of [f]ederal financial assistance." We have already considered and rejected the argument that the ADEA "is a [f]ederal statue prohibiting discrimination by recipients of [f]ederal assistance." *Sullivan v. Univ. of Tex. Health Sci. Ctr. at Houston Dental Branch*, 217 Fed. App'x 391, 395 (5th Cir. 2007) (unpublished). "The ADEA prohibits age discrimination by 'employers,' not by those who receive federal financial assistance." *Id.* The appellant cites to cases from other circuits that address the issue of waiver

under the Rehabilitation Act, 29 U.S.C. § 794, and Title IX, 20 U.S.C. § 1681. These decisions have no relevance to the current case.

The appellant next argues that she is still entitled to sue for injunctive relief even if her claims for monetary damages are barred. This assertion is equally misplaced, as the jurisdictional bar imposed by the Eleventh Amendment applies "regardless of the nature of the relief sought." *Pennhurst*, 465 U.S. at 100. The only manner in which the appellant could obtain injunctive relief is under the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908). In order for *Ex Parte Young* to apply, however, the appellant must seek to enjoin a state official from violating federal law. *See Ysleta Del Sur Pueblo v. Laney*, 199 F.3d 281, 285–86 (5th Cir. 2000). In the instant case, the appellant has not sued any state official. Therefore, her state law and ADEA claims are barred by the Eleventh Amendment.

## B. Title VII Claims

Title VII prohibits discrimination in employment decisions on the basis of "race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). Absent direct proof of discrimination, a plaintiff may assemble proof via circumstantial evidence using the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "First, the plaintiff must establish a prima facie case of discrimination. Second, the employer must respond with a legitimate, nondiscriminatory reason for its decision. This burden on the employer is only one of production, not persuasion, involving no credibility assessments." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000) (internal quotation marks and citations omitted). If the employer meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact as to whether the nondiscriminatory reason is a pretext or is only one of the reasons for the employer's conduct and the plaintiff's protected

characteristic is another motivating factor. *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 412 (5th Cir. 2007).

To establish a prima facie case of discrimination, a plaintiff must show that she is a member of a protected class; is qualified for the job; suffered an adverse employment action by the employer; and was either replaced by someone outside her protected group or received less favorable treatment than a similarly situated individual outside the protected group. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). "In disparate treatment cases, the plaintiff-employee must show nearly identical circumstances for employees to be considered similarly situated." *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 353 (5th Cir. 2007) (internal quotation marks and citations omitted).

The appellant challenges the district court's holding that she failed to establish pretext as to her racial and gender discrimination claims. The district court determined that the appellee had offered a legitimate nondiscriminatory reason for transferring the appellant to 4 South: its desire to separate the appellant from the patient who had accused her of physically assaulting him. The appellant does not contest that this reason is both legitimate and nondiscriminatory. Rather, she argues that this reason was pretextual because Gilmore had complained about other nurses who were not subsequently transferred. However, the uncontradicted summary judgment evidence indicated that Gilmore had not accused these nurses of physical abuse. Therefore, the appellant has failed to present summary judgment evidence demonstrating that other nurses were not transferred under "nearly identical circumstances." *See Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1090 (5th Cir. 1995). The district court correctly held that the appellee was entitled to summary judgment on the appellant's discrimination claims.

The appellant also contests the district court's grant of summary judgment on appellant's claim of unlawful retaliation. "There are three elements to a

prima facie case of retaliation under Title VII: (1) that the plaintiff engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002). An employee has engaged in protected activity if she has either "(1) opposed any practice made an unlawful employment practice by Title VII or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII." *Haynes v. Pennzoil Co.*, 207 F.3d 296, 299 (5th Cir. 2000) (quoting 42 U.S.C. § 2000e-3(a)). The district court determined that the appellant had not established a primae facie case because she did not engage in protected activity. On appeal, the appellant argues that she reported other nurses for workplace violations such as riding an IV pole down a hallway. Reporting this type of activity, however, does not fall under any category of protected behavior outlined in Title VII. *See* 42 U.S.C. § 2000e3-(a). Therefore, the district court did not err in granting summary judgment to the appellee on the appellant's unlawful retaliation claim.

The district court also dismissed appellant's claim of a hostile work environment under Title VII. To establish a hostile work environment claim, a plaintiff must demonstrate that

> (1) she is member of a protected group; (2) she was the victim of uninvited . . . harassment; (3) the harassment was based on [a protected characteristic]; (4) the harassment affected a term, condition, or privilege of [her] employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action

*Harvill v Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005). In order for harassment to affect a term, condition or privilege of employment, it must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift*

*Sys.,* 510 U.S. 17, 21 (1993) (internal quotation marks and citation omitted). "Title VII . . . does not set forth a general civility code for the American workplace." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 54, 68 (2006) (internal quotation marks and citation omitted).

The appellant maintains that she was subject to a hostile work environment as a result of the internal investigation and her transfer to 4 South. The district court held that neither the investigation nor the transfer were connected in any way to the appellant's membership in any protected class. It also held that the two-week investigation and the transfer were not sufficiently severe or pervasive to survive summary judgment. *See, e.g., Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 872–74 (5th Cir. 1999) (stating that offensive and boorish conduct spanning over a year did not qualify as severe or pervasive). On appeal, the appellant argues that she was "humiliated" by the appellee's actions. She fails to demonstrate, however, that she presented any evidence at summary judgment indicating that the investigation and transfer were connected in any way to her membership in a protected class and were sufficiently severe or pervasive to create a hostile work environment.

Finally, we address the district court's entry of summary judgment on appellant's claim of constructive discharge. To establish constructive discharge, a plaintiff must demonstrate that "'working conditions were so intolerable that a reasonable employee would feel compelled to resign.'" *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) (quoting *Faruki v. Parsons*, 123 F.3d 315, 319 (5th Cir. 1997)). "Constructive discharge requires a greater degree of harassment than that required by a hostile environment claim." *Id.* (citation omitted). In evaluating a claim of constructive discharge, a court may consider factors such as a downgrade in salary, assignment to menial work, or demotion. *Id.* On appeal, the appellant argues that she was humiliated by her suspension and the false accusation of assault on a patient. The false accusation, however,

came from Gilmore, not the appellee. Furthermore, the appellee was bound under state law and hospital protocol to investigate the allegations. The appellant also argues that she was not allowed to return to NSICU, which was her area of expertise. However, "constructive discharge cannot be based upon the employee's subjective preferences for one position over another." *Jett v. Dallas Indep. Sch. Dist.*, 798 F.2d 748, 755 (5th Cir. 1986). The district court correctly held that the appellant's claim of constructive discharge fails as a matter of law.

For the foregoing reasons, the judgment of the district court is hereby AFFIRMED.