United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 22, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

)))))))))))))))))))))))))))
No. 05-50238
Summary Calendar
)))))))))))))))))))))))))))

Peter Vallecillo,

                                        Plaintiff-Appellant,

versus

United States Department
of Housing & Urban Development,

                                        Defendant-Appellee,

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:03-CV-1120

_____

Before SMITH, GARZA, AND PRADO, Circuit Judges.

PER CURIAM:[*]

     The question presented in this case is whether the district

court erred in granting summary judgment for Defendant-Appellee

United States Department of Housing & Urban Development ("HUD") on

Plaintiff-Appellant Peter Vallecillo's hostile work environment and

constructive discharge claims under 42 U.S.C. § 2000(e) et seq.

("Title VII").  Because we find that summary judgment was properly

_____

     [*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

granted, we AFFIRM the district court's ruling.

I.       BACKGROUND

HUD hired Peter Vallecillo as a Community Builder ("CB") Fellow in September 1998. The CB program employed 400 professionals from an applicant pool of over 8,000 in order to provide out-reach services and foster community and economic development in approximately 81 HUD regions. After candidates were selected, HUD's Human Resources Department, pursuant to Office of Personnel Management guidelines, reviewed each contender's prior experience and recommended a salary grade level of either GS-13, GS-14, or GS-15.

HUD offered Vallecillo a CB fellowship position, which he accepted, starting at the GS-13 level. Beginning early in his tenure, and continuing throughout the duration of his employment, Plaintiff-Appellant complained that Hispanics were under-represented in the CB program and that they were paid less than Caucasian and African-American employees. Vallecillo argues that after he questioned HUD's employment practices, he experienced problems with his own employment with the department.

On two occasions, in November 1998, two supervisors in the San Antonio office complained to Cynthia Leon, Vallecillo's immediate supervisor, that Plaintiff-Appellant had behaved inappropriately and had been verbally abusive during meetings. In February 1999, Leon accused Vallecillo of unprofessional conduct associated with his

2

office hours. In March 1999, Plaintiff-Appellant received a performance appraisal of "fully successful," a rating that was lower than the rest of his co-workers. Additionally, in March 1999, Vallecillo received a "memorandum of counseling" admonishing him for several incidents of unprofessional conduct including verbal confrontations with supervisors, his alleged misuse of the email system, and his attitude towards Leon. The memorandum did not affect Plaintiff-Appellant's compensation or benefits. Vallecillo also contends that, on one occasion, one of his supervisors referred to him as Che Guevara, and that in a small meeting, another supervisor referred to him as an "aggressive Hispanic" while commenting on the need for him to transfer to the Ft. Worth branch of the CB program. Plaintiff-Appellant alleges that he was also sent an email notifying him that he would be transferred to the Ft. Worth territory. Vallecillo resigned from the CB program on October 29, 1999.

II.     PROCEDURAL HISTORY

Vallecillo filed a claim with the EEOC alleging hostile work environment based on his national origin and constructive discharge in violation of Title VII. On August 8, 2003, the EEOC issued its decision affirming the administrative judge's determination that there was insufficient evidence to support Appellant's claims. Vallecillo, arguing the same claims, then filed suit against HUD in

the United States District Court for the Western District of Texas on November 10, 2003, and Defendant-Appellee filed a motion for summary judgment on November 12, 2004. On January 27, 2005, the district court granted HUD's Motion for Summary Judgment, holding that Vallecillo failed to establish issues of fact (1) on whether the complained of harassment was on the basis of race, nationality or a protected activity; and (2) that the harassment was sufficiently severe or pervasive. Additionally, because the court found that Plaintiff's hostile work environment claim failed, it summarily denied Vallecillo's constructive discharge claim. Vallecillo timely filed his Notice of Appeal on February 3, 2005, claiming that the district court erred in granting HUD's Motion for Summary Judgment on Plaintiff-Appellant's hostile work environment and constructive discharge claims. We will consider each claim in turn.[1]

---

[1] Defendant-Appellee argues that Vallecillo has abandoned any challenge to the order granting summary judgment by failing to specifically address the district court's rationale. *See, e.g.*, *McKethan v. Texas Farm Bureau*, 996 F.2d 734, 739 n.9 (5th Cir. 1993)(failure to sufficiently brief an issue constitutes waiver of the issue); *Cousin v. Trans Union Corp.*, 246 F.3d 359, 373 n.22 (5th Cir. 2001)(quoting *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994))("Normally, '[a]n appellant abandons all issues not raised and argued in its initial brief on appeal.'"). Pursuant to Rule 28 of the Federal Rules of Appellate Procedure, "[t]he argument shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes, and parts of the record relied on." FED. R. APP. P. 28(a)(5). While Vallecillo does not specifically address the enumerated reasons the district court gave for granting Defendant-Appellee's motion, we determine that through his broad objections to the court's findings

III.     STANDARD OF REVIEW FOR SUMMARY JUDGMENT

We review a district court's grant of summary judgment *de novo*, applying the same standard as the district court.  *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 873 (5th Cir. 1999).

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).  When making its determination, the court must draw all justifiable inferences in favor of the nonmoving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993).

To defeat a properly supported motion for summary judgment, the

---

regarding his hostile work environment and constructive discharge claims, he argues with enough specificity for us to consider all of his arguments.  Moreover, we should note that this is unlike the more execrable situation where an appellant either raises a completely new issue in its brief, disadvantaging the appellee, and for which the procedural bar concerning initial briefs was developed.  It is also unlike the situation in *Cinel*, where the insurance company raised an issue with this Court that had no statutory support, thus, leaving us with no legal basis on which we could decide the issue.

non-movant must present more than a mere scintilla of evidence. *Anderson*, 477 U.S. at 251. Rather, a factual dispute precludes a grant of summary judgment if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *See Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999).

IV.     DISCUSSION

### 1.  Hostile Work Environment

Title VII is violated "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)(quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65-67(1986))(internal citations omitted). To prevail on a hostile work environment claim, Vallecillo must prove that:  1) he belongs to a protected group; 2) he was subjected to unwelcome harassment;  3) the harassment complained of was based on his race or national origin;  and 4) the harassment affected a term, condition, or privilege of employment. *Frank v. Xeorox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003).

In addition to the Plaintiff's subjective perception of the abusiveness of the environment, the environment must be such that a reasonable person would find it hostile or abusive. *Harris*, 510 U.S. at 21-22; *Frank*, 347 F.3d at 138. Whether an environment is

6

hostile or abusive can be determined only by looking at the circumstances, including, *inter alia*, the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with the employee's work performance. *Harris*, 510 U.S. at 23.

Most importantly, as the Supreme Court pointed out in *Meritor* and re-articulated in *Harris*, the "'mere utterance of an...epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment to implicate Title VII." *Id.* at 21. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1988)(internal quotation marks omitted).

We agree with the district court that even if the Plaintiff-Appellant demonstrates that he belongs to a protected class and that he was subjected to unwelcome harassment, he has not raised an issue of fact that the complained-of harassment was based on his race or national origin or that the harassment affected a term, condition, or privilege of employment. Accepting all of the incidents that Vallecillo lists as true, none are related to his protected status. Only two alleged statements verge on being related to Plaintiff-Appellant's protected status: 1) his immediate supervisor referring to him as Che Guevara, and 2) his second-level supervisor referring

7

to him as an "aggressive Hispanic," the type of individual allegedly needed in the Ft. Worth territory. Even if these statements can be classified as racially offensive, they are not sufficiently severe or pervasive to constitute a hostile work environment.

The two statements related to race and national origin epitomize the type of utterances, epithets, and offhand comments that the we have repeatedly stated were beyond Title VII's purview.[2] In addition, because a reasonable employee would not perceive the environment as being hostile or abusive, all of the complained-of acts, together, do not amount to discriminatory changes in the terms and conditions of employment. Hence, we agree with the district court that Plaintiff-Appellant fails to establish a genuine issue of material fact on his hostile work environment claim.

---

[2]For instance, in *Shepherd*, Jodie Moore, a co-worker of Plaintiff Debra Jean Shepherd remarked that "[Shepherd's] elbows [were] the same color as [her] nipples." *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 872 (5th Cir. 1999). In addition, Moore commented on the size of Shepherd's thighs while pretending to look under her desk, attempted to look down Shepherd's clothing, and exclaimed "here's your seat" while patting his lap. *Id.* Although *Shepherd* involved alleged discrimination based on sex, and Vallecillo's claims are based on race and national origin, at best, Vallecillo's allegations are on the same plane as those in Shepherd. Shepherd's allegations were insufficient to succeed on summary judgment in that case, *Id.,* and Vallecillo's are insufficient here. *See also*, *Hayatavoudi v. Univ. of Louisiana Sys. Bd. of Tr.*, 240 F.3d 1073 (5th Cir. 2000)(holding that a reference to an Iranian-American employee as being like "the dogs in the desert, howling as the caravan goes by," which was interpreted as a reference to an Arabic proverb was not sufficiently severe or pervasive)(unpublished).

8

2.    Constructive Discharge

Vallecillo's constructive discharge claim can be regarded as an aggravated case of hostile work environment.  In addition to the facts proffered in support of his hostile work environment claim, he claims that he was twice given an ultimatum to transfer to Ft. Worth, and that an internal grievance that he filed was dismissed and forwarded on for further review.  Appellant's claims are not persuasive.

A plaintiff who advances a hostile-environment constructive discharge claim "must show working conditions so intolerable that a reasonable person would have felt compelled to resign." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 124 S. Ct. 2342, 2354 (2004); *see also, Faruki v. Parsons*, 123 F.3d 315, 319 (5th Cir. 1997);  *Ward v. Bechtel Corp.*, 102 F.3d 199, 202 (5th Cir. 1997);  *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994).    The resigning employee bears the burden of proving constructive discharge.  *Jurgens v. EEOC*, 903 F.2d 386, 390-391 (5th Cir. 1990).    In determining whether an employee has been constructively discharged, courts consider the following factors relevant, singly or in combination:  (1) demotion;  (2) reduction in salary;  (3) reduction in job responsibilities;  (4) reassignment to menial or degrading work;   (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation;  or (6) offers of early retirement that would make the

employee worse off, regardless of whether the offer was accepted. *Barrow*, 10 F.3d at 297. The test is an objective, "reasonable employee" test: whether a reasonable person in the plaintiff's shoes would have felt compelled to resign. *Id.; See also Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649-50 (5th Cir. 2004).

While proof that the employer imposed the intolerable conditions with the specific intent to force the employee to resign is not required, aggravating factors may be used to support a constructive discharge claim. These factors include hostile working conditions or invidious intent to create or perpetrate the intolerable conditions compelling the resignation. *Jurgens*, 903 F.2d at 390-393. Finally, it is of utmost importance that "[c]onstructive discharge requires a greater degree of harassment than required by a hostile environment claim." *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001).

We agree with the district court's reasoning that because Appellant's hostile work environment claim has failed, his constructive discharge claim must also fail. *See id.* Furthermore, conditions were not so intolerable as to compel Vallecillo's resignation. HUD did not demote Vallecillo, and his salary was not reduced. To the extent that any of his job responsibilities were reduced, these reductions did not rise to an actionable degree. *See, e.g., Brown v. Bunge Corp.*, 207 F.3d 776, 782–83 (5th Cir. 2000)(affirming the district court's grant of summary judgment to

10

the employer on constructive discharge, where the resigning employee showed he was demoted and had fewer job responsibilities).

Moreover, the meeting and email notifying and reminding Appellant that he would be transferred to Ft. Worth do not constitute badgering, harassment, or humiliation. Finally, the facts that the meeting notifying Vallecillo of the proposed transfer occurred almost two-and-one-half months before Appellant resigned and that he was never actually transferred detract from his claim of constructive discharge. Hence, Vallecillo was not constructively discharged.

V.      Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court as to all claims.

AFFIRMED.

11