# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-20147

United States Court of Appeals
Fifth Circuit

**FILED**
November 3, 2015

Lyle W. Cayce
Clerk

MARTIN DAILEY,

Plaintiff–Appellant,

v.

SHINTECH, INCORPORATED,

Defendant–Appellee.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:12-CV-3027

Before STEWART, Chief Judge, and CLEMENT and ELROD, Circuit Judges.

PER CURIAM:[*]

Appellant Martin Dailey brought racial discrimination claims against his former employer, Shintech. Dailey appeals the district court's orders granting summary judgment for Shintech. Because Dailey's evidence fails to establish a genuine issue of material fact, we AFFIRM.

## I.

Dailey, who is African-American, worked for Shintech at Shintech's Freeport, Texas, chemical plant from 1990 until July 2012 when his

---

[*] Pursuant to Fifth Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Fifth Circuit Rule 47.5.4.

employment with Shintech was terminated.  Dailey argues that several events at Shintech between August 2010 and July 2012 constitute employment discrimination based on race.

During that time, Dailey made two complaints to Shintech's human resources department (HR).  First, Dailey made an oral complaint to HR in August 2010 about a co-worker who Dailey alleged was improperly taking readings in the chemical plant.  HR directed Dailey to file the complaint in writing, and Dailey did so in October 2010.  Dailey stated in the written complaint that ever since he had complained to Hickner about the co-worker, Dailey's supervisor, James Tidwell, and superintendent, Mike Gassen, had created "a hostile attitude and environment" for Dailey.  Dailey complained of "Hostile Environment; Retaliation; and Discrimination."  Dailey's complaint did not mention race, did not provide any specific facts, and failed to explain how Gassen or Tidwell were hostile to Dailey.  When HR attempted to investigate Dailey's complaint by interviewing him, he refused to provide any information to HR for the investigation, and HR closed the investigation.  Dailey testified that he refused to participate in the HR investigation because he feared his complaint would be used against him by Tidwell and Gassen.

Dailey's second complaint to HR occurred in 2012, two days before Dailey's employment was terminated.  The complaint, which did not mention race, regarded an incident where a co-worker threatened to "kick [Dailey's] a—s."  Soon after HR learned of the incident, HR fired the co-worker in compliance with Shintech's zero-tolerance policy on workplace violence.

Dailey also testified that he mentioned in a September 2, 2010 corrective action meeting with Hickner, Gassen, and Tidwell that Tidwell had "jokingly" called Dailey a "black little motherf—r" on at least two occasions.  Dailey testified that Tidwell also told Dailey he would "kick his black a—s," but did

not specify when Tidwell said that. Another co-worker testified that he had heard Tidwell say that to Dailey approximately ten years prior.

Dailey testified about one additional incident involving an argument between Dailey and a female co-worker in March 2011. Dailey testified that the female co-worker called him a "ni—er" after discovering that Dailey had given her on-call shift to another co-worker, which deprived her of overtime pay. Dailey did not report this comment to HR, and there is no evidence that the co-worker ever directed that term at Dailey again.

Dailey was involved in two disciplinary incidents leading up to his employment termination. The first incident involved Dailey refusing to communicate with a co-worker because of a disagreement. Dailey was given a "Corrective Action Notice" in a September 2, 2010 meeting with Hickner, Gassen, and Tidwell, for refusing to work with his co-worker and for giving an insubordinate response to Tidwell when Tidwell tried to address the matter with Dailey. The Corrective Action Notice instructed Dailey to communicate with everyone on his shift and warned that failure to improve his behavior and work with other employees would result in further corrective action "up to and including termination."

The second disciplinary incident involved alleged unruly behavior at fire school in September 2010. At fire school, Shintech employees who work in chemical plants learn to fight chemical fires. Participants wear full firefighting gear and fight live fires. The supervisor of the safety school contacted Hickner to inform her that Dailey had been unruly and unsafe at fire school, had been disrespectful to the supervisor, and would not be permitted to return to fire school unless his behavior improved. According to the supervisor, Dailey had grabbed another participant's fire hose, which the fire school supervisor testified was unsafe behavior. The supervisor also stated that Dailey had

yelled curse words at other participants because Dailey was upset about having to wait his turn, and when the fire school supervisor tried to calm Dailey down by telling Dailey he could go next, Dailey replied, "F—k that. I ain't going up there." According to Dailey, however, the fire school incident was completely made-up because Gassen and Tidwell did not like him.

On September 22, 2010, Dailey was given a final Corrective Action Notice based on the fire school incident. It was after this disciplinary action that Dailey filed his October 2010 written complaint alleging a hostile work environment, retaliation, and discrimination. No discipline or alleged harassment occurred between the October 2010 complaint and the third and final disciplinary incident before Dailey's termination.

The third incident, which occurred on June 29, 2012, involved an argument between Dailey and his call partner in which Dailey threatened to "mop the floor with him." The call partner reported the threat to Hickner, and HR interviewed Dailey about the incident. After Dailey admitted to making the threat, Shintech fired Dailey in July 2012 for violating Shintech's zero-tolerance policy on workplace violence, as well as for Dailey's pattern of unprofessional behavior, evidenced by his two prior corrective action notices.

Dailey appeals the district court's two summary judgment rulings, which granted summary judgment for Shintech on Dailey's claims of race discrimination, retaliation, and hostile work environment.[1]

---

[1] Dailey's First Amended Complaint asserted four claims against Shintech and a Shintech employee: (1) intentional racial discrimination under 42 U.S.C. § 1981; (2) retaliation under 42 U.S.C. § 1981; (3) discrimination and retaliation under Title VII of the Civil Rights Act of 1964; and (4) state-law defamation. The district court dismissed Dailey's defamation claim, and Dailey does not appeal that ruling.

The magistrate judge noted that Dailey did not raise a hostile work environment claim in either his First Amended Complaint or his Proposed Pre-Trial Order, but the district court considered the claim on its merits "because Shintech appears to believe Plaintiff has raised a hostile work environment claim," and the parties briefed the claim in their filings related

## II.

We review de novo the district court's grant of summary judgment. *Rogers v. Bromac Title Servs., LLC*, 755 F.3d 347, 350 (5th Cir. 2014). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Rogers*, 755 F.3d at 350. All facts and inferences are construed in the light most favorable to the nonmoving party. *Id.*

Dailey's claims of racial discrimination and retaliation are asserted under Title VII and 42 U.S.C. § 1981. We analyze "racial discrimination and retaliation claims based on Title VII and 42 U.S.C. § 1981[] under the same rubric of analysis." *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002); *see also Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (stating that the "legal framework governing [Title VII and § 1981 claims] is co-extensive").

## A.

To establish a claim of employment discrimination based on race without direct evidence of discrimination,[2] Dailey must first make out a prima facie case of discrimination, which requires Dailey to show that he "(1) is a member

---

to the motion for summary judgment. *See Handzlik v. United States*, 93 F. App'x 15, 17 (5th Cir. 2004) (holding that where both parties "squarely address" a claim in their summary judgment briefs, the court may conclude that the parties tried the issue by consent); *see also Am. Standard Credit, Inc. v. Nat'l Cement Co.*, 643 F.2d 248, 257 n.4 (5th Cir. 1981) ("On appeal, [defendants] argue that neither [plaintiff's] pleadings nor the pretrial order included [the theory plaintiff later asserted]. . . . While this is true, our review of the record convinces us that this issue . . . was tried by the consent of parties."); *McDonough Marine Serv., Inc. v. M/V Royal St.*, 608 F.2d 203, 204 (5th Cir. 1979) ("It is clear that under Fed. R. Civ. P. 15(b) the trial court could find implied consent of the parties to the trial of the unpleaded issue . . . ."). The parties fully briefed this claim on appeal.

[2] Dailey does not argue that his claims are based on direct evidence of discrimination.

of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). If the plaintiff establishes a prima facie case, "the burden then shifts to the employer to produce evidence that its actions were justified by a legitimate, nondiscriminatory reason." *Raggs*, 278 F.3d at 468. Finally, if the employer produces such evidence, the burden shifts back to the plaintiff "to show by a preponderance of the evidence that the employer's nondiscriminatory explanation is pretextual." *Id.*

It is undisputed that Dailey is a member of a protected class, was qualified for his position, and was fired. Shintech argues that there is no evidence that Dailey was replaced by an individual who was not a member of his protected class, but Dailey testified that he was replaced by a non-African-American individual. Shintech did not rebut this, though Shintech was certainly in a position to do so if it was untrue.

Because Dailey established a prima facie case of discrimination, the burden shifted to Shintech to produce evidence of "a legitimate, nondiscriminatory reason" for firing Dailey. *Raggs*, 278 F.3d at 468. Shintech met this burden by producing evidence that Shintech fired Dailey because he threatened to physically harm a co-worker in violation of Shintech's zero-tolerance policy on workplace violence. To prevail, therefore, Dailey's evidence must create a genuine dispute of material fact regarding pretext. Specifically, Dailey must show that Shintech's reason for firing him "is not true," or that Shintech's reason, though true, "is only one of the reasons for its conduct," with another "motivating factor" being Dailey's race. *Black v. Pan Am. Labs., LLC*,

No. 15-20147

646 F.3d 254, 259 (5th Cir. 2011).   Because Dailey does not argue that Shintech's reason for firing him is not true, Dailey must show that his race was another "motivating factor" for his employment termination.

The district court rejected Dailey's arguments that race was a motivating factor for his employment termination.   First, the district court found that Dailey was not, as he argued, treated differently than other similarly situated individuals outside of his protected class.   The district court noted that Shintech had fired Dailey's co-worker, who was not African-American, soon after Shintech learned that the co-worker had threatened Dailey with physical violence.   Second, the district court rejected Dailey's argument that his disciplinary incidents were evidence of pretext.   The district court pointed out that the fire school incident was confirmed by a third-party fire school trainer who was not associated with Shintech, and Dailey admitted to threatening his co-worker.   Ultimately, there was no evidence that Shintech did not hold an honest belief in its non-discriminatory reason for terminating Dailey's employment.   *See Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408–09 (5th Cir. 1999).   We agree with the district court that Dailey's evidence does not create a genuine fact issue of pretext on his racial discrimination claim.

**B.**

Title VII "forbids retaliation by employers against employees who report workplace race or gender discrimination." *Crawford v. Metro. Gov't of Nashville & Davidson Cty.*, 555 U.S. 271, 273 (2009).   To establish a prima facie case of retaliation, Dailey must show that "(1) [h]e engaged in protected activity; (2) an adverse employment action occurred; [and] (3) a causal link exists between the protected activity and the adverse employment action." *Royal v. CCC & R Tres Arboles, LLC*, 736 F.3d 396, 400 (5th Cir. 2013).   If, as

here, no direct evidence of discrimination is produced, a retaliation claim is analyzed under the *McDonnell Douglas* burden-shifting framework. *Id.*

Shintech concedes that Dailey established the first two requirements of a retaliation claim, but disputes that there is any causal link between Dailey's October 2010 complaint and Dailey's employment termination in July 2012. To determine causation in this context, the court may consider, among other facts and circumstances of the individual case: (1) the employee's past disciplinary record; (2) whether the employer followed its typical policy and procedures in terminating the employee; and (3) the temporal proximity of the employee's protected conduct to the adverse employment action. *Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 508 (5th Cir. 1994). First, Dailey's disciplinary record shows that Dailey engaged in unprofessional and disrespectful conduct, which resulted in a final warning in September 2010, prior to Dailey's protected activity in October 2010. Second, Shintech's termination of Dailey's employment complied with Shintech's zero-tolerance policy regarding workplace violence. This policy was corroborated when Shintech fired Dailey's co-worker soon after Shintech found out the co-worker had threatened Dailey with physical harm.

Finally, over a year and a half passed between Dailey's October 2010 complaint and Dailey's July 2012 employment termination. "Close timing between an employee's protected activity and an adverse action against [him] may provide the causal connection required to make out a prima facie case of retaliation." *Evans v. City of Hous.*, 246 F.3d 344, 354 (5th Cir. 2001). A year and a half between Dailey's protected activity and his employment termination is not "[c]lose" timing. And Dailey provides no evidence that Shintech was nevertheless retaliating against Dailey when Shintech fired him. *Compare, e.g.*, *Myers v. Crestone Int'l, LLC*, 121 F. App'x 25 (5th Cir. 2005) (holding that

a three-month lapse between the protected conduct and the adverse employment action was not sufficient to establish causation without further evidence of pretext), *with Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 44 (5th Cir. 1992) (holding that causation was established, even though a time lapse of fourteen months occurred between the protected conduct and the adverse employment action, because the employee had worked for nine years without a single complaint until she filed her EEOC charge, after which the employer "suddenly found three so-called flagrant indiscretions" and the employer mentioned her EEOC complaint to her at least twice a week and "harassed [her] to death about it" during that time). Unlike the circumstances in *Shirley*, and similar to the circumstances in *Myers*, Dailey produced no evidence of retaliatory behavior by Shintech between Dailey's final Corrective Action Notice in September 2010, which was prior to Dailey's protected activity, and Dailey's employment termination in July 2012. Dailey's evidence does not create a genuine fact issue regarding causation and thus cannot support his retaliation claim at the summary judgment stage.

## C.

To establish a Title VII hostile work environment claim based on race discrimination, Dailey must show: "(1) [h]e belongs to a protected group; (2) [h]e was subjected to unwelcomed harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). Shintech argues that Dailey cannot show that the complained-of harassment affected a term, condition, or privilege of Dailey's employment.

No. 15-20147

The district court rejected Dailey's argument that his complained-of harassment affected a term, condition, or privilege of Dailey's employment. The district court reasoned that Tidwell's racial comments toward Dailey did not, alone, create a fact issue, because such evidence does not rise to the level of "severe or pervasive" harassment.  We agree.  "[S]poradic use of abusive language" is outside of Title VII's purview.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  Accordingly, Dailey's hostile work environment claim also fails.  AFFIRMED.