# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 5, 2023

Lyle W. Cayce
Clerk

No. 22-30546

Vanoy Allen,

*Plaintiff—Appellant*,

*versus*

Our Lady of the Lake Hospital, Incorporated,

*Defendant—Appellee*,

Our Lady of the Lake Hospital Physicians Group, L.L.C.,

*Respondent—Appellee*.

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:19-CV-575

Before Richman, *Chief Judge*, and Stewart and Dennis, *Circuit Judges*.

Per Curiam:[*]

Vanoy Allen alleges she was subjected to a hostile work environment due to her race while employed at Our Lady of the Lake Hospital, Inc.

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-30546

(Hospital) and brings a claim under 42 U.S.C. § 1981. She further alleges that this treatment constituted constructive discharge in violation of Title VII and 42 U.S.C. § 1981. The district court granted summary judgment in favor of the Hospital on both claims. Because Allen failed to raise a genuine dispute of material fact as to whether her treatment rose to the level of a hostile work environment or constructive discharge and the evidence is insufficient as a matter of law to support her claims, we affirm.

# I

Allen began working as a registered nurse (RN) at the Hospital in 2011, then in 2012 was in the Cardiac Intensive Care Unit (CICU), and transferred to the Heart and Vascular Universal Cardiac Unit (HVCU) in 2013. In December 2014, Allen changed her employment status from RN to PRN, which indicated that she worked on an "as needed" basis to provide supplemental staffing. Evidence in the record indicates PRNs did not receive the same benefits as fulltime nurses. She continued to work as a PRN until she resigned in October 2018.

When Allen was categorized as an RN, she performed some shifts as a charge nurse, a position with higher pay. However, she stopped receiving charge nurse shifts when she voluntarily changed her employment status to PRN. Kathy Hussain, a supervisor, testified that generally, the expectations were that PRN nurses would not perform in the charge role and generally would not admit patients directly from the Operating Room immediately post open heart surgery.

Allen alleges she faced discrimination while working at the Hospital. She filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on December 15, 2017, alleging discrimination based on race, age, and retaliation. The EEOC found no cause and issued a right to sue letter in 2019. Allen then filed this lawsuit pro se.

No. 22-30546

In her complaint, Allen alleged racial discrimination, racial harassment, and retaliation in violation of Title VII of the Civil Rights Act[1] and Louisiana state law; racial discrimination in violation of 42 U.S.C. § 1981; and intentional infliction of emotional distress and age discrimination under Louisiana state law. The Hospital filed a motion for partial dismissal, and the district court dismissed: Allen's race discrimination, harassment, age discrimination, and intentional infliction of emotional distress claims brought under state law; hostile work environment and harassment claims to the extent they went beyond the scope of the EEOC charge; and allegations relating to discrete acts of discrimination more than three hundred days before the EEOC charge.

Allen then retained counsel and filed an amended complaint, which asserted a race-based hostile work environment claim under 42 U.S.C. § 1981 and constructive discharge and retaliation claims under Title VII and 42 U.S.C. § 1981. The Hospital filed a motion for summary judgment, which Allen opposed as to her hostile work environment and constructive discharge claims. She did not oppose the motion for summary judgment regarding her retaliation claim.

The district court granted the Hospital's motion for summary judgment. The district court entered final judgment, and Allen timely appealed the dismissal of her hostile work environment and constructive discharge claims. This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

The district court summarized Allen's evidence as:

[T]he sum of Plaintiffs['] *competent* summary judgment evidence shows the following: Dr. Boedefeld publicly

---

[1] 42 U.S.C. § 2000e, *et seq.*

3

complained that Plaintiff was hired only because she was Black (in 2012/2013); Dr. Boedefeld twice refused to discuss cases with Plaintiff (in 2012/2013); Dr. Boedefeld twice publicly yelled at Plaintiff (in 2012/2013); Dr. Boedefeld once "questioned" Plaintiff's supervisor (in 2017); a co-worker once publicly referred to Plaintiff as a "bitch" (in 2016); Supervisor Hussain once said at a staff meeting "Vanoy you don't have a voice" (unspecified date); Plaintiff once requested to work a shift in the CICU, and the shift was awarded instead to two "full-time nurses" from another unit (in 2018); and, finally, Supervisor Hussain once refused Plaintiffs['] request for a meeting to discuss Plaintiff's annual performance review (in 2018).

The district court concluded that "[e]ven assuming that all of the foregoing slights were racially motivated, the aggregate of these insults falls well-short of what is required to save a hostile work environment claim from summary judgment" and that the burden for a constructive discharge claim was even higher.

Allen argues that the district court also should have credited (1) evidence that white nurses Paulette Savoy and Dani Coss were given charge nurse duties while under PRN status, which resulted in higher pay, even though Allen was not; (2) testimony from Melissa White, a secretary, indicating "that white nurses were given charge nurse shifts 90% of the time;" (3) testimony from Barbara Hill that Dr. Boedefeld made generalized complaints about black nurses when Allen was not present and "reneged on a directive to fire a nurse upon learning she was white, and not black;" (4) unauthenticated interview notes from Samantha Valentine showing that white nurses were permitted to attend a training that black nurses were not; and (5) evidence a co-worker once referred to Allen as "hostile" when talking to a supervisor.

No. 22-30546

## II

We review a district court's grant of summary judgment de novo, applying the same standard as the district court.[2] "We will affirm the district court's decision if we 'find that no genuine issue of material fact remained for trial and that judgment was proper as a matter of law.'"[3] "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant,"[4] and the "facts must be particularized, not vague or conclusory."[5] "While we review the evidence in the light most favorable to the nonmoving party, 'conclusional allegations and unsubstantiated assertions may not be relied on as evidence by the nonmoving party.'"[6] We will first address Allen's hostile work environment claim and then address her constructive discharge claim.

## A

Allen argues that the district court erred in dismissing her hostile work environment claim. As the district court explained, courts apply the same rubric to analyze racial discrimination claims under Title VII and under 42

---

[2] *See West v. City of Hous.*, 960 F.3d 736, 740 (5th Cir. 2020) (per curiam) (citing *Petzold v. Rostollan*, 946 F.3d 242, 247 (5th Cir. 2019)).

[3] *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 327 (5th Cir. 2009) (quoting *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 102 (5th Cir. 1990)); *see also* Fed. R. Civ. P. 56(a).

[4] *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[5] *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 161 (5th Cir. 2021) (citing *Kariuki v. Tarango*, 709 F.3d 495, 505 (5th Cir. 2013)).

[6] *West*, 960 F.3d at 740 (citing *Carnaby v. City of Hous.*, 636 F.3d 183, 187 (5th Cir. 2011)).

No. 22-30546

U.S.C. § 1981.[7]  "To survive summary judgment on a hostile work environment claim based on race . . . discrimination, a plaintiff must show that (1) she is a member of a protected class; (2) she suffered unwelcomed harassment; (3) the harassment was based on her membership in a protected class; (4) the harassment 'affected a term, condition, or privilege of employment'; and (5) 'the employer knew or should have known' about the harassment and 'failed to take prompt remedial action.'"[8]  "To be actionable, the work environment must be 'both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'"[9]

The district court's analysis primarily assessed the fourth factor, whether the harassment complained of affected a term, condition, or privilege of employment.  "To affect a term, condition, or privilege of employment, the harassment must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[10]  "The alleged conduct must be objectively and subjectively hostile or abusive," and "[t]he totality of the employment circumstances determines whether an environment is objectively hostile."[11]  "Although no single factor is determinative, pertinent considerations are (1) 'the frequency of the discriminatory conduct'; (2) 'its severity'; (3) 'whether it is physically

---

[7] *See Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 399 (5th Cir. 2021); *Lauderdale v. Tex. Dep't of Crim. Just., Institutional Div.*, 512 F.3d 157, 166 (5th Cir. 2007).

[8] *West*, 960 F.3d at 741 (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).

[9] *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)).

[10] *West*, 960 F.3d at 741-42 (quoting *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008)).

[11] *Id.* at 742 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-23 (1993)).

threatening or humiliating, or a mere offensive utterance'; and (4) 'whether it unreasonably interferes with an employee's work performance.'"[12] In determining whether summary judgment is appropriate, we consider whether a reasonable jury could find the conduct so severe or pervasive as to alter a term or condition of employment.[13] We agree with the district court that Allen failed to provide evidence that would defeat summary judgment.

### 1

We begin by analyzing whether the evidence credited by the district court is sufficient for Allen's claim to survive summary judgment. First, although we do not require a plaintiff to show a certain number of instances of harassment,[14] Allen has failed to show that the harassment she faced was frequent.[15] The evidence credited by the district court consists of ten

---

[12] *Id.* (quoting *Harris*, 510 U.S. at 23).

[13] *See Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 436 (5th Cir. 2005).

[14] *See E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 400 (5th Cir. 2007) ("Under the totality of the circumstances test, a single incident of harassment, if sufficiently severe, could give rise to a viable Title VII claim as well as a continuous pattern of much less severe incidents of harassment." (citations omitted)).

[15] *Compare West,* 960 F.3d at 742 (concluding plaintiff failed to show her harassment was frequent or pervasive when some conduct occurred "once," "twice," or "occasionally" and plaintiff failed to provide evidence of frequency of "other complained-of conduct"), *Mendoza v. Helicopter*, 548 F. App'x 127, 129 (5th Cir. 2013) (per curiam) (unpublished) ("[T]he complained of conduct occurred sporadically over a several year period and cannot accurately be described as pervasive."), *and Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 328-29 (5th Cir. 2004) (concluding conduct was not pervasive when the plaintiff "did not even estimate how many times [the] conduct occurred"), *with Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 439, 443 (5th Cir. 2011) (holding a genuine dispute existed when the plaintiff "endured a pattern of name-calling of a half-dozen times daily" that "may have interfered with his pecuniary interests" and when, "[o]n many occasions, there were incidents of physical intimidation and/or violence" involving the plaintiff's supervisor), *Lauderdale v. Tex. Dept. of Crim. Just.*, 512 F.3d 157, 164 (5th Cir. 2007) (finding harassment pervasive when plaintiff received unwanted phone calls "ten to fifteen times a night for almost four months"), *and Farpella-*

incidents over seven years.  Allen argues that the district court erred by requiring her to show she suffered from severe *and* pervasive conduct amounting to a certain number of harassing incidents.  Allen is correct that the standard is severe *or* pervasive and that, by requiring conduct to be both severe and pervasive, the district court "impose[d] a more stringent burden on [her] than required by law."[16]  Even so, none of her allegations substantiated by evidence are sufficiently egregious that they are actionable without being pervasive.[17]

Additionally, Allen has failed to show that the alleged actions were severe, physically threatening, or humiliating.  Hostile work environment claims are not intended to function as a "general civility code."[18]  Sporadic use of abusive language, one shift denial, and one refused meeting are not severe or humiliating under the governing standard,[19] and Allen has not alleged any physical threats.

---

*Crosby v. Horizon Health Care*, 97 F.3d 803, 806 (5th Cir. 1996) (concluding harassing conduct was pervasive when it was described as occurring "two or three times a week").

[16] *See Harvill*, 433 F.3d at 435.

[17] *See id.* at 435-36; *Dailey v. Shintech, Inc.*, 629 F. App'x 638, 640, 644 (5th Cir. 2015) (per curiam) (unpublished) (affirming grant of summary judgment for employer on hostile work environment claim even though plaintiff's supervisor called him "a 'black little motherf—r' on at least two occasions," the supervisor said "he would 'kick his black a—s,'" and a coworker called plaintiff "a 'ni—er'").

[18] *See Lauderdale*, 512 F.3d at 163 ("Title VII . . . is not a 'general civility code,' and 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998))).

[19] See *Faragher*, 524 U.S. at 788 ("Properly applied, [the standards for judging hostility] will filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'") (quoting B. Lindemann & D. Kadue, Sexual Harassment in Employment Law 175 (1992)); *Vallecillo v. U.S. Dep't of Hous. & Urb. Dev.*, 155 F. App'x 764, 767 (5th Cir. 2005) (per curiam) (unpublished) (concluding that supervisors

No. 22-30546

Finally, Allen has not alleged that these actions prevented her from succeeding in the workplace. On the contrary, she argues that "[t]he fact that Allen continued to perform her job well, and that [the Hospital] did not discipline her, or terminate her employment in the traditional sense, should not detract from [Allen]'s showing of pervasive or severe conduct sufficient to alter the terms and conditions of her employment."

Therefore, even assuming, as the district court did, that all the actions were based on Allen's race, the evidence is insufficient to survive summary judgment.[20] Objectively, a reasonable person would not find the actions Allen experienced to be offensive enough to constitute a hostile work environment.[21] We now turn to the evidence that Allen argues was improperly credited or not credited by the district court.

---

calling the plaintiff "Che Guevara" and an "aggressive Hispanic" were "not sufficiently severe or pervasive to constitute a hostile work environment" "even if these statements can be classified as racially offensive").

[20] *See, e.g.*, *Friend v. McAdams*, 861 F. App'x 825, 830 (5th Cir. 2021) (per curiam) (unpublished) (concluding evidence African American employee was assigned to work under captain who (1) did not like black people; (2) screamed at her; (3) did not name her to her preferred position' (4) refused to meet with her; (5) stated she would not be around much longer; (6) directed a supervisor to write up things she did wrong; (7) became upset when her name was mentioned; and (8) required her in her role as a police officer to dismiss tickets issued to white people did not rise to the level of severe or pervasive); *Harris v. Drax Biomass Inc.*, 813 F. App'x 945, 948 (5th Cir. 2020) (per curiam) (unpublished) (holding evidence that plaintiff (1) was yelled at for not doing job correctly; (2) requested but did not receive training on certain equipment; (3) heard racist comments made by supervisor to a different African American employee; and (4) would not be allowed by supervisor to wait in a group of African American employees for work to begin to be insufficiently severe or pervasive).

[21] *See Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009).

9

**2**

Allen argues that the district court erred by crediting testimony from Hussain that PRN nurses would generally not perform the charge nurse role. Allen argues that (1) her testimony and the testimony of Coss and Savoy discredit the testimony of Hussain; (2) the written guidelines were not created until after she was denied charge nurse shifts; and (3) Hussain is an interested witness. Allen's testimony included "that she believed she was denied charge nurse shifts because of her race" and that she asked Hussain and her supervisors why she was not given charge nurse shifts and they responded with no reason until eventually informing her that it was because she was a PRN. Coss and Savoy's testimony included that they were white and received charge nurse shifts despite being PRN nurses.

The district court explained that Allen "fail[ed] to specifically cite evidence controverting that PRN nurses 'provide supplemental staffing'" and "traditionally did 'not perform in the charge role and generally would not admit patients directly from the Operating Room immediately post open heart surgery." The district court, citing Allen's opposition to summary judgment, concluded that "a fair reading of her evidence tends to support" certain shifts not generally being available to nurses with PRN status. In explaining why it did not credit Allen's evidence of discriminatory shift denials, the district court stated that "Plaintiff contends that from 2014 onward, [the Hospital] systematically refused to schedule her for charge nurse shifts or for fresh post open heart surgery shifts—*i.e.*, precisely the shifts that were not traditionally available to PRNs under [the Hospital's] unwritten *and* written guidance."

Evidence that two white PRN nurses received charge nurse shifts, Allen's supervisors did not immediately provide her with an explanation for her shift assignments, and a policy not initially in writing does not create a

genuine dispute of material fact regarding a hostile work environment. Allen admits that she acted as a charge nurse while she worked as an RN but stopped receiving charge nurse shifts when she voluntarily changed to PRN status. Additionally, Allen admitted in her opposition to summary judgment that the Hospital had a policy regarding tasks for PRN nurses, though she disputed that it was consistently applied. Allen has failed to show a genuine dispute of material fact as to why she was denied charge nurse shifts after changing to PRN status.

**3**

Allen argues that the district court "erroneously raised or altered Allen's burden of proof and erroneously declined to consider CSR White's deposition testimony." In her deposition, White testified that she could not remember how often white nurses would be assigned charge nurse shifts and could not remember having previously told Allen's counsel that ninety percent of the time charge shift nurses were white. However, Allen's counsel played back a recording of a prior conversation to refresh White's memory. After her recollection was refreshed, White was asked: "Is that correct, then, your belief that about 90 percent of the time the white nurses would be given charge nurse shifts?" and responded: "Yes, because it may have had seven Caucasian nurses versus three black nurses, but the seven Caucasian nurses may have had more experience at being a charge nurse."

The district court stated that if it was established that ninety percent of the time white nurses were assigned to be charge nurses, "conceivably" that "could be relevant to Plaintiff's remaining claims of hostile work environment and constructive discharge." However, it stated "that this testimony is too vague and conclusory for purposes of creating an issue of fact at summary judgment. Accordingly, it is disregarded."

Allen argues the district court placed a higher burden on her than is appropriate at summary judgement because it required her to "'definitively' establish or prove that white nurses were given charge nurse shifts 90% of the time" whereas she only needed to raise a genuine issue of fact. Further, she argues that the testimony was not vague or conclusory. However, we agree with the district court that, especially in light of the conflicting evidence that Allen was denied the shifts due to her status as a PRN, White's testimony was too vague to raise a genuine issue of fact. It was proper for the district court to disregard the evidence on this ground.[22]

**4**

Finally, we need not decide whether the district court erred by not crediting (1) testimony from Barbara Hill that Dr. Boedefeld made generalized complaints about black nurses when Allen was not present and "reneged on a directive to fire a nurse upon learning she was white, and not black;" (2) unauthenticated interview notes from Samantha Valentine showing white nurses were permitted to attend training that black nurses were not; and (3) evidence that a co-worker once referred to Allen as "hostile" when talking to a supervisor. Assuming *arguendo* that this evidence is credible, it shows that complaints were made about black nurses outside of

---

[22] *See Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 161 (5th Cir. 2021) ("[W]hen we have held self-serving affidavits or depositions insufficient to create a fact issue, it is because their contents were either conclusory, vague, or not based on personal knowledge." (citations omitted)); *Kariuki v. Tarango*, 709 F.3d 495, 505 (5th Cir. 2013) ("[W]ithout more, a vague or conclusory affidavit is insufficient to create a genuine issue of material fact in the face of conflicting probative evidence." (citation omitted)); *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002) (stating a non-movant cannot defeat summary judgment by presenting "conclus[ory] allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation" (citation omitted)).

Allen's presence,[23] Allen may have missed one training event,[24] and a coworker once insulted Allen.  Even were we to consider this additional evidence, the totality of the evidence is insufficient to support a hostile work environment claim.

Allen argues for the first time in her reply brief that other evidence also created genuine issues of material fact.  However, issues raised for the first time in a reply brief are forfeited.[25]

We agree with the district court that Allen has failed to raise a genuine dispute of material fact regarding whether the harassment was severe or pervasive.  We therefore do not address the remaining factors.  Because the district court did not err in determining that there was no genuine dispute of material fact as to Allen's hostile work environment claim and that the Hospital was entitled to summary judgment as a matter of law, we affirm the dismissal of Allen's hostile work environment claim.

**B**

Allen argues that the evidence above creates genuine issues of material fact which preclude the Hospital's motion for summary judgment as to Allen's constructive discharge claim under 42 U.S.C. § 1981 and Title VII. As the district court ably explained, "[t]o prove a constructive discharge, a 'plaintiff must establish that working conditions were so intolerable that a

---

[23] *See Septimus v. Univ. of Hous.*, 399 F.3d 601, 612 (5th Cir. 2005) (examining sex-based hostile work environment and stating "[a]ll of [plaintiff]'s other summary judgment evidence on this claim pertained to other women in the [company], not [plaintiff], and therefore is not relevant").

[24] *See Harris v. Drax Biomass Inc.*, 813 F. App'x 945, 948 (5th Cir. 2020) (per curiam) (unpublished) (holding evidence not severe or pervasive even though plaintiff requested but did not receive training on certain equipment).

[25] *See United States v. Ponce*, 896 F.3d 726, 727 (5th Cir. 2018).

reasonable employee would feel compelled to resign.'"[26]  This "requires a greater degree of harassment than that required by a hostile environment claim."[27]  The district court correctly reasoned that because Allen did not show a sufficiently hostile environment to support a hostile work environment claim, she cannot succeed on her constructive discharge claim.[28]  We therefore affirm the district court's dismissal of this claim.

## C

Finally, Allen argues that the district court erred by failing to rule on her motion to compel discovery prior to ruling on summary judgment. According to Allen, the motion to compel discovery requested information regarding "potential comparators."  The district court reasoned that comparator evidence could not save Allen's hostile work environment or constructive discharge claims "because such evidence is not relevant to the dispositive issue of whether [Allen] was subjected to objectively severe, pervasive, and/or intolerable harassment" and Allen had "waived the right to argue that comparator evidence *is* relevant . . . by failing to even brief the issue."  An argument is forfeited if the party with the burden of proof or persuasion fails to brief it in the district court.[29]  We therefore do not address it here.

---

[26] *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) (quoting *Faruki v. Parsons*, 123 F.3d 315, 319 (5th Cir. 1997)).

[27] *Id.* (citing *Benningfield v. City of Hous.*, 157 F.3d 369, 378 (5th Cir.1998)); *see also Lauderdale v. Tex. Dep't of Crim. Just.*, 512 F.3d 157, 167 (5th Cir. 2007).

[28] *See Vallecillo v. U.S. Dep't of Hous. & Urb. Dev.*, 155 F. App'x 764, 768 (5th Cir. 2005) (per curiam) (unpublished) (citation omitted).

[29] *See Grogan v. Kumar*, 873 F.3d 273, 277 (5th Cir. 2017).

No. 22-30546

\*     \*     \*

The judgment of the district court is AFFIRMED.